# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

ERNEST SIMPSON,                                    )
                                                   )
     Plaintiff,          )  No. 06-1090 (CKK)
                                                   )
   v.                               )
                                                   )
FEDERAL BUREAU OF PRISONS, *et al.*,               )
    Defendants.                )
_____)

## DEFENDANTS' MOTION TO DISMISS

 Defendants Federal Bureau of Prisons, Harrell Watts, Administrator of National Inmate

Appeals, Central Office; D. Scott Dodrill, Northeast Regional Director; K. Bittenbender,

Discipline Hearing Officer, FCI Allenwood; and Margie Cook, SIS Technician, FCI Allenwood,

in only their official capacities as employees of the Federal Bureau of Prisons respectfully

request that this Court dismiss this case pursuant to Federal Rules of Civil Procedure 12 (b)(1),

(2), (3), (4), and (6) for lack of subject matter jurisdiction, lack of personal jurisdiction, improper

venue, insufficiency of process, and failure to state a claim upon which relief may be granted.[1]

 Defendant respectfully directs the Court to the memorandum in support of this motion,

which is filed together with this motion, and the proposed order also filed with this motion.

---

 [1] Because the individual defendants, except for defendant Watts, have not all been
properly served in their individual capacities, they do not join this motion in an individual
capacity and hereby preserve all defenses available to them in an individual capacity, including
without limitation, immunity from suit.

December 21, 2006                                  Respectfully submitted,


_____/s/_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS, DC BAR #434122
Assistant United States Attorney


_____/s/_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC 20530
(202) 307-1249
(202) 514-8780 (facsimile)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ERNEST SIMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 06-1090 (CKK) |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL BUREAU OF PRISONS, *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Defendants Federal Bureau of Prisons, Harrell Watts, Administrator of National Inmate

Appeals, Central Office; D. Scott Dodrill, Northeast Regional Director; K. Bittenbender,

Discipline Hearing Officer, FCI Allenwood; and Margie Cook, SIS Technician, FCI Allenwood,

in only their official capacities as employees of the Federal Bureau of Prisons respectfully

request that this Court dismiss this case in its entirety.[1]

**FACTS AND BACKGROUND**

**I.    PLAINTIFF**

The plaintiff, Ernest Simpson, Register Number 18567-037, was sentenced in the United

States District Court for the District of Maryland on December 22, 1981, to five years in federal

prison for interstate transportation of forged securities and six years for conspiracy and

transportation of falsely made, forged, altered and counterfeited securities.  See Declaration of

Ann H. Zgrodnik, Attachment 1: SENTRY Public Information Inmate Data.  Additionally, on

June 8, 1982, the District of Columbia Superior Court sentenced Simpson to eight years for

---

[1]  Because the individual defendants, except for defendant Watts, have not been properly
served in their individual capacities, they do not join this motion in an individual capacity and
hereby preserve all defenses available to them in an individual capacity, including without
limitation, immunity from suit.

conspiracy and forgery.  See id.  On August 29, 1986, he was released on parole.  See id.  On

December 4, 1991, the United States District Court for the District of Maryland sentenced him to

34 months for bank fraud.  See id.  Additionally, as a result of his bank fraud conviction, he was

convicted as a parole violator.  See id.  He was released on parole again on May 27, 1994.

See id.  Due to another parole violation, he returned to federal prison on February 3, 2000 and

was recommitted to federal custody.  See id.  His last place of incarceration was at the Federal

Correctional Institution in Allenwood, Pennsylvania (FCI Allenwood).  See id.  He was released

on March 7, 2005.  See id.

## II.    PLAINTIFF'S ALLEGATIONS

Plaintiff is a *pro se* litigant who has filed his complaint under the Federal Tort Claims

Act, 28 U.S.C. § 2670, et seq. ("FTCA"), and Bivens v. Six Unknown Named Agents of the

Federal Bureau of Narcotics, 403 U.S. 388 (1971) (hereinafter "Bivens").  He claims that his due

process rights were violated after disciplinary action was taken against him incident to his

receipt of money orders from an individual who was an associate of another inmate incarcerated

at FCI Allenwood.  See Complaint, ¶18.  Plaintiff states that on November 13, 2003, he was

issued an incident report for Receiving Money From Another Inmate for Prohibited Purpose,

violation of Code 217.  Id. at ¶24.  Plaintiff claims that he received a disciplinary hearing and

was found to be guilty of Code 217 as charged. Id. at ¶¶25-27.  Plaintiff appealed this hearing

through the administrative remedy process to the Northeast Regional Director. Id. at ¶30.  The

Regional Director made a finding which resulted in a rehearing. Id. at ¶31.  On March 4, 2004,

plaintiff had a rehearing and was found to have committed the prohibited act. Id. at ¶32.  Plaintiff

again appealed through the administrative remedy process to the Northeast Regional Director.

Id. at ¶33.  Plaintiff states that the Northeast Regional Director partially granted the appeal and ordered another rehearing. Id. at ¶34.  Plaintiff claims that he appealed to the Central Office and that the appeal was denied. Id. at ¶¶35-37.  Plaintiff alleges that Defendant Bittenbender did not schedule a rehearing and that he was released from prison without having a rehearing. Id. at ¶38. Plaintiff states in his complaint that on or about September 5, 2005, he filed an FTCA claim against the BOP for damages which was ultimately denied.  Id. at ¶¶2-3.

As relief, Plaintiff requests declaratory relief, expungement of the incident report, compensatory damages in the amount of $400,000.00, punitive damages in the amount of $400,000.00, attorneys fees, costs, and any other damages he is entitled to under law.  See Complaint.

## III.    PLAINTIFF'S ADMINISTRATIVE TORT CLAIM

The Bureau of Prisons' regulations applicable to administrative tort claims asserted under the FTCA require claims to be submitted first to the Regional Office in the region where the basis for the claim occurred.  See 28 C.F.R. § 543.31(c).  FCI Allenwood is a facility within the Northeast Region of the Bureau of Prisons.  See 28 C.F.R. §  503.2 (b)(5).  Thus, any administrative tort claim arising out of the conditions at FCI Allenwood would be processed by the Northeast Regional Office of the Federal Bureau of Prisons.  See 28 C.F.R. § 543.31.  Under the applicable regulations, if a claimant is dissatisfied with the final agency action, he/she may file suit in an appropriate U.S. District Court within six months of the date of the decisional memorandum.  28 U.S.C. § 2401(b); 28 C.F.R. § 543.32(g).

A review of the administrative tort claim records indicates that on or about September 5, 2005, plaintiff filed an administrative tort claim with the Bureau of Prisons Northeast Regional

Counsel's Office, alleging personal injury at the Federal Correctional Institution (FCI) Allenwood.  See Attachment A, Administrative Tort Claim Number TRT-NER-2005-04683.

In a memorandum dated February 28, 2006, the Northeast Regional Counsel of the Federal Bureau of Prisons denied plaintiff's administrative tort claim.  The memorandum from the Regional Counsel advised plaintiff that if he was dissatisfied with the decision (to deny plaintiff's administrative tort claim), he could seek reconsideration or bring an action against the United States in an appropriate United States District Court within six months of the date of the memorandum. See Attachment B, Memorandum from Northeast Regional Counsel to Plaintiff, dated February 28, 2006, p. 2.

On or about June 15, 2006, plaintiff filed this civil action in the United States District Court for the District of Columbia.

## IV.    FACTS

On November 13, 2003, at approximately 8:15 a.m., Lieutenant F. Passaniti delivered a copy of Incident Report Number 1161850, charging plaintiff with Receiving Money From Another Inmate For A Prohibited Purpose, a violation of Bureau of Prisons Code 217.  See Attachment C, Incident Report Number 1161850.  The incident report stated that on November 12, 2003, an SIS Technician was monitoring incoming money transactions which were received in the mail room on November 7, 2003.  Id. at §11. The SIS Technician found a money order, dated October 30, 2003, for $200, which was sent to plaintiff. Id.  It was determined that the sender was an associate of another inmate and that the sender was sending the money to plaintiff on the other inmate's behalf.  Id.

An investigation into the charge was conducted by Lieutenant F. Passaniti on November 13, 2003.  See Attachment C, §22.  Plaintiff was advised of his rights, and stated he understood them. Id. at §24. It was noted that plaintiff displayed an unfavorable attitude and did not make any comment during the investigation. Id.  Plaintiff did not request any witnesses.  Id. at §25. Upon concluding his investigation, Lieutenant F. Passaniti referred the case to the Unit Disipline Committee (UDC) for further action.  Id. at §§ 26 and 27.

Lieutenant F. Passaniti then forwarded Incident Report Number 1161850 to the UDC for processing.  On November 14, 2003, at 1:30 p.m., plaintiff appeared before the UDC for an initial hearing and stated that "I did not ask for this money, nor did I know who sent it.  Ingram doesn't owe me any money."  See Attachment C, §17.  At the conclusion of the initial hearing, the UDC referred the charges to the Discipline Hearing Officer (DHO) for disposition. Id. at §18 (B).  This referral was made based on the body of the incident report.  Id. at §19.  Plaintiff was then given notice of his DHO hearing, as well as notice of his rights at the hearing.  See Attachment D, Notice of Discipline Hearing Before The DHO, and Attachment E, Inmate Rights at Discipline Hearing.  As the "Notice" form reflects, Petitioner checked the line indicating that he did not wish to have a staff representative.  See Attachment E.  Plaintiff also indicated that he did not wish to have any witnesses at his hearing. Id.

On November 20, 2003, the DHO hearing was held.  See Attachment F, DHO Report, §I(B).  The DHO report indicates that Plaintiff expressed his desire to decline staff representation during the DHO hearing. Id. at § II (E).  Plaintiff did not raise any procedural issues or present written documentation as evidence.  Id. at §III (B).  During the hearing, Plaintiff stated, "Please give me the benefit of the doubt for this report.  I've assisted this guy

(Ingram) with legal work for the past year and a half and I've never asked him for anything

(money or commissary).  I did this (legal work) out of the goodness of my heart."  "I didn't

know the money had come from Ms. Grimes and I didn't know where it may have come from so

I couldn't refuse it.  I thought the money came from somewhere else." Id.   At the conclusion of

the hearing, the DHO determined plaintiff committed the prohibited act of Code 217, Receiving

Money from Another Inmate for a Prohibited Purpose. Id. at §§ IV & V.

After finding that plaintiff violated Code 217, the DHO imposed the sanction of

disciplinary segregation for 30 days (15 days were suspended pending clear conduct for 180

days), forfeiture of statutory good conduct time for 27 days, loss of commissary privileges for

180 days and loss of job (Unit 4B Orderly). See Attachment F, §VI.   These sanctions were

imposed to impress upon plaintiff that "receiving money from another inmate for a prohibited

purpose cannot be tolerated in a correctional institution as such behavior seriously threatens the

security and orderly operation of the institution." Id. at §VII.

On November 26, 2003, plaintiff was provided a copy of the DHO report. See

Attachment F, at §IX.  Records indicate that plaintiff appealed the DHO's decision to the

Northeast Regional Director of the Bureau of Prisons by filing Administrative Remedy Request

Number 320229-R1 on December 19, 2003 and Administrative Remedy Number 320229-R2 on

January 7, 2004. See Declaration of Ann H. Zgrodnik, Attachment 2: Administrative

Generalized Retrieval Screen, at pp. 15-16.  Both of these administrative appeals were rejected

for procedural defects.  Id.  On or about January 20, 2004, plaintiff filed Regional Administrative

Remedy Appeal Number 320229-R3 with the Northeast Regional Office challenging the

November 20, 2003 decision of the Disciplinary Hearing Officer at FCI Allenwood. See

Declaration of Ann H. Zgrodnik, Attachment 3: Regional Administrative Remedy Appeal, Case Number 320229-R3, and Response. <u>See</u> <u>also</u> Attachment 2, p. 17.  In a response dated February 19, 2004, plaintiff was informed that he will be advised of further proceedings as a review of the record revealed there were some questions concerning the specific evidence relied upon to find he committed the prohibited act. <u>Id</u>.  Plaintiff was informed that he may appeal to the Regional Office if he is dissatisfied with the result of the further proceedings. <u>Id</u>.

A DHO rehearing was held on March 4, 2004.  <u>See</u> Attachment G, Rehearing Amended DHO Hearing Report dated March 5, 2004.  The DHO found that plaintiff committed the prohibited act of Code 299, conduct which disrupts the disorderly running/security of the institution, most like Code 217, receiving money from another inmate for a prohibited purpose. <u>Id</u>. at §§IV & V.  The DHO sustained the initial sanction imposed from the original DHO Hearing. <u>Id</u>. at §VI.  Plaintiff was provided a copy of the Rehearing Amended DHO Hearing Report on March 5, 2004. <u>Id</u>. at §IX.

On or about March 25, 2004, plaintiff appealed the DHO's decision by filing Regional Administrative Remedy Number 329151-R1 to the Northeast Regional Director.  <u>See</u> Declaration of Ann H. Zgrodnik, Attachment 4: Regional Administrative Remedy Appeal 329151-R1, and Response. <u>See</u> <u>also</u> Attachment 2, p.18.  In a response dated April 23, 2004, the Northeast Regional Director informed plaintiff that the DHO had ordered another rehearing. <u>Id</u>. On or about May 10, 2004, plaintiff submitted a Central Office Administrative Remedy Appeal challenging the Regional Director's decision.  <u>See</u> Declaration of Ann H. Zgrodnik, ¶6, Attachment 5: Central Office Administrative Remedy Appeal Number 329151-A1, and Response. <u>See</u> <u>also</u> Attachment 2, p. 19.  In a response dated May 19, 2004, plaintiff was

informed that he was given a rehearing from the Northeast Regional Director and must reinstate his appeal to the Northeast Regional Director if he was dissatisfied with the outcome of the rehearing. Id.

Records indicate that on January 11, 2005, the DHO issued an amended DHO rehearing report and provided plaintiff with a copy of the report. See Attachment H, Amended DHO Rehearing Report dated January 11, 2005, at §§VIII and IX. The DHO found that plaintiff committed the prohibited act of Receiving Money from Another Inmate, violation of Code 328. Id. at §IV. The DHO imposed 15 days of disciplinary segregation, forfeiture of statutory good conduct time for 27 days, loss of commissary privileges for 180 days and loss of job (Unit 4B Orderly). Id. at §VI. The DHO noted that the sanctions previously imposed reflect no change to statutory good conduct time. Id. at §VII. However, the 30 days of disciplinary segregation which was initially imposed was lessened to 15 days served. Id. It was also noted that the 15 days of disciplinary segregation which was previously suspended pending clear conduct was retracted from the report. Id. Plaintiff was informed of his appeal rights and that he had 20 calendar days under the Administrative Remedy Procedure to appeal the action. Id. at §VIII.

Records indicate that plaintiff filed *no* further administrative remedy requests after receiving a copy of the amended DHO Rehearing Report on January 11, 2005. See Declaration of Ann H. Zgrodnik, Attachment 2: Administrative Remedy Generalized Retrieval screen for Ernest Simpson, Reg. No. 18567-037. Plaintiff was released from FCI Allenwood on March 7, 2005. See Declaration of Ann H. Zgrodnik, Attachment 1: SENTRY Public Information Inmate Data.

## ARGUMENT

### I.    PLAINTIFF'S FTCA CLAIM MUST BE DISMISSED

#### A.    The Federal Bureau of Prisons and Individuals are not Proper Defendants in an FTCA Suit

Plaintiff names the Federal Bureau of Prisons and four individuals as defendants. However, the FTCA is a limited waiver of sovereign immunity and Congress has provided only for suits against the United States. See 28 U.S.C. § 1346(b)(1); Scanwell Lab., Inc. v. Thomas, 521 F.2d 941, 947 (D.C. Cir. 1975); Richardson v. United States Dept. of Interior, 740 F. Supp. 15, 20 n.10, 26 (D.D.C. 1990). Agencies and individual government employees cannot be sued under the FTCA. See 28 U.S.C. § 2679(a), (b)(1). Therefore, the Court should dismiss plaintiff's FTCA claims against the BOP and the individual defendants under Rule 12(b)(1) for lack of jurisdiction.

#### B.    Venue Is Improper in this Court

Plaintiff's FTCA claims must be dismissed or transferred pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue. Under 28 U.S.C. § 1402(b), venue for any FTCA claim lies only in the judicial district where the plaintiff resides or where the cause of action arose. See 28 U.S.C. § 1402(b); Bryant v. Carlson, 652 F. Supp. 1286, 1287 (D.D.C. 1987); Bartel v. F.A.A., 617 F. Supp. 190, 198 (D.D.C. 1985). A federal inmate's residence for venue purposes is his current place of confinement. See In re Pope, 580 F.2d 620, 622 (D.C. Cir. 1978); Bryant, 652 F. Supp. at 1287. A tort claim arises under the FTCA at the place where the negligent acts occurred. See Beattie v. United States, 592 F. Supp. 780, 784 (D.D.C. 1984).

According to the docket sheet in this action, plaintiff currently resides in Hyattsville, Maryland, located in the District of Maryland. Nonetheless, he filed this action in the United

States District Court for the District of Columbia.  None of the factual allegations in the

complaint concern events that occurred within the jurisdiction of the United States District Court

for the District of Columbia.  Rather, plaintiff only alleges events that occurred at FCI

Allenwood, located in the Middle District of Pennsylvania.  Therefore, venue for plaintiff's

FTCA claim does not lie in the United States District Court for the District of Columbia.

Therefore, that claim should be dismissed.

## II.    PLAINTIFF'S BIVENS CLAIM MUST BE DISMISSED

### A.    Bivens Liability Does Not Extend to the Bureau of Prisons

The Court should dismiss plaintiff's Bivens claims against the Bureau of Prisons because

a plaintiff may not bring a Bivens action against the United States or one of its agencies.  In

Bivens, the Supreme Court inferred a cause of action for money damages against Federal Bureau

of Narcotics officers directly from the Fourth Amendment, which the officers had allegedly

violated under color of federal law.  See Bivens v. Six Unknown Agents of Fed. Bureau of

Narcotics, 403 U.S. 388, 396-97 (1971).  The Supreme Court, in FDIC v. Meyer, unanimously

refused to extend Bivens to imply a cause of action directly against the United States or a federal

agency.  See FDIC v. Meyer, 510 U.S. 471, 484-86 (1994).  The Court explained that the logic of

Bivens did not support an action directly against the Federal Savings and Loan Insurance

Corporation (FSLIC) because the Bivens decision was based partly on the fact that a direct

action against the Government was not available.  See id. at 485.  In further support of its

holding, the Court reasoned that implying a direct damages cause of action against federal

agencies would undermine Bivens' purpose of deterring officers from committing future

constitutional violations because plaintiffs would try to circumvent qualified immunity by suing

10

federal agencies instead of the individual officers.  See id.  Finally, the Court expressed its

hesitance to extend Bivens liability to FSLIC and other federal agencies considering the

potentially enormous financial burden such a holding could impose on the federal government.

See id. at 486.

Moreover, in deciding not to allow Bivens actions against private entities acting under

color of federal law, the Supreme Court reaffirmed the above reasoning in Meyer and noted that

prisoners may not bring Bivens claims against the United States or the Bureau of Prisons.  See

Correctional Services Corp. v. Malesko, 534 U.S. 61, 72 (2001); see also Drake v. F.A.A., 291

F.3d 59, 72 (D.C. Cir. 2002), cert. denied, 123 S.Ct. 1295 (2003) (stating that it is "well-settled"

that Bivens liability cannot be imposed on an agency of the federal government); Adeogba v.

Migliaccio, 266 F. Supp.2d 142, 145 n.2 (D.D.C. 2003) (concluding that a Bivens suit against

the INS should be dismissed for lack of subject matter jurisdiction because sovereign immunity

prevents Bivens actions against the United States and its agencies); Mac'Avoy v. Smithsonian

Inst., 757 F. Supp. 60, 69 (D.D.C. 1991) (noting that the Bivens doctrine does not apply to

lawsuits brought against the federal government and are routinely dismissed for lack of subject

matter jurisdiction).  Therefore, plaintiff's Bivens claims against the Bureau of Prisons should be

dismissed under Rule 12(b)(1) for lack of jurisdiction.

### B.       The Court Lacks Personal Jurisdiction Over All Defendants

The Court should also dismiss plaintiff's Bivens claims against all defendants, non-

residents, for lack of personal jurisdiction.  Because Bivens suits are brought against government

officials in their individual, rather than official capacities, personal jurisdiction over the

individual defendants is required to maintain a Bivens claim.  See Robertson v. Merola, 895 F.

Supp. 1, 3 (D.D.C. 1995); <u>Deutsch v. U.S. Dept. of Justice</u>, 881 F. Supp. 49, 52 (D.D.C. 1995),

<u>aff'd</u>, 93 F.3d 986 (D.C. Cir. 1996).  In order for the United States District Court for the District

of Columbia to have personal jurisdiction over a nonresident defendant, jurisdiction must be

proper under both the District of Columbia long-arm statute and consistent with the

constitutional requirements of due process.  <u>See</u> <u>GTE New Media Servs. Inc. v. BellSouth Corp.</u>,

199 F.3d 1343, 1347 (D.C. Cir. 2000); <u>United States v. Ferrara</u>, 54 F.3d 825, 828 (D.C. Cir.

1995); <u>Crane v. Carr</u>, 814 F.2d 758, 762 (D.C. Cir. 1987).  The District of Columbia's long-arm

statute, D.C. Code section 13-423, provides in relevant part:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's–
>
>> (1) transacting any business in the District of Columbia;
>>
>> (2) contracting to supply services in the District of Columbia;
>>
>> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
>>
>> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
>>
>> (5) having an interest in, using, or possessing real property in the District of Columbia;
>>
>> (6) contracting to insure or act as surety ...; or
>>
>> (7) marital or parent and child relationship ...
>
> (b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

D.C. Code § 13-423.

If the terms of the long-arm statute are satisfied, a plaintiff must then show that the exercise of personal jurisdiction is within the bounds of the Due Process Clause. See GTE New Media Servs. Inc., 199 F.3d at 1347. A plaintiff must show "minimum contacts" between the defendant and the forum so as to establish that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. See id.; Wiggins v. Equifax Inc., 853 F. Supp. 500, 502 (D.D.C. 1994). Under the "minimum contacts" standard, courts must find that "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being hauled into court there." GTE New Media Servs. Inc., 199 F.3d at 1347 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). Plaintiff bears the burden of pleading the facts necessary to substantiate personal jurisdiction in this Court. See Crane v. New York Zoological Soc., 894 F.2d 454, 456 (D.C. Cir. 1990); Novak-Canzeri v. Saud, 864 F. Supp. 203, 205 (D.D.C. 1994).

In the instant case, plaintiff fails to meet his burden of establishing proper in personam jurisdiction in the United States District Court for the District of Columbia under section 13-423. All the BOP defendants live outside the District Columbia, and only one, Mr. Watts, works in the District of Columbia. Although BOP Inmate Appeals Administrator Watts **works** in the District of Columbia as an employee of the Department of Justice, he does so only in his official capacity conducting business for his employer, and plaintiff **only** seeks to hold Mr. Watts liable through respondeat superior liability, which is inappropriate in a Bivens action. With the exception of Defendant Watts, all the named defendants live and work outside the District of Columbia. Furthermore, plaintiff alleges no facts in his complaint to establish that defendants caused and that he suffered any injury in the District of Columbia. The alleged injury of which

13

plaintiff complains occurred in Pennsylvania.  Therefore, the Court lacks personal jurisdiction over the individual BOP defendants under the District's long-arm statute.  <u>See</u>, <u>e.g.</u>, <u>Meyer v. Reno</u>, 911 F. Supp. 11, 14 (D.D.C. 1996) (determining that the court could not exercise jurisdiction over a BOP employee who worked at FCI Memphis where he was not alleged to conduct any business or to supply services in the District of Columbia and where plaintiff did not allege any injury in the District of Columbia); <u>Deutsch</u>, 881 F. Supp. at 52 (finding no personal jurisdiction over BOP defendants working in New York and Pennsylvania where plaintiff did not allege that defendants conducted business or contracted for services in the District of Columbia or that he suffered an injury in the District of Columbia).

Furthermore, plaintiff has failed to allege facts showing that the exercise of personal jurisdiction over the defendants in this case would satisfy due process requirements.  In fact, plaintiff does not establish any connection between the defendants as individuals and the District of Columbia in his complaint, except for Mr. Watts.  Consequently, the Court should dismiss all claims against the individual BOP defendants for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

### C.    Plaintiff Has Not Perfected Service Against All Federal Defendants

All but one of the individual defendants in this action have not been properly served with the complaint in accordance with the rules applicable to individual defendants.  <u>Simpkins v. District of Columbia Government</u>, 108 F.3d 366, 369 (D.C. Cir. 1997).  It is well established that, in an action against a federal employee in his or her individual capacity, the individually-sued defendant must be served with process in accordance with Rule 4(e) of the Federal Rules of Civil Procedure.  <u>Id.</u>  Rule 4(e) provides that service is effectuated by complying with the laws

14

of the state for such in which the district court is located by delivering a copy of the summons and complaint to the defendant (or his appointed agent) **personally**, or by leaving copies thereof at the defendant **dwelling house or usual place of abode** with some person of suitable age and discretion who resides there. Fed. R. Civ. P. 4(e). The SCR-Civil 4(e)(2) allows for service upon individuals by first class, certified or registered mail at their dwelling or usual place of abode. Actual notice will not, of course, substitute for technically proper service under Rule 4 and will not permit the Court to render a personal judgment against an individually-sued defendant. Sieg v. Karnes, 693 F.2d 803 (8th Cir. 1982); See also Stafford v. Briggs, 444 U.S. 527 (1980).

In this case, plaintiff attempted to serve defendants Bittenbender, and Cook by sending the complaint and summons to their work place, but failed to send a copy of the summons and complaint to a proper address. Service by mail at the defendants place of employment is **not** proper service. Although plaintiff did send the complaint and summons to defendant Dodrill at his place of employment, and he signed for that complaint and summons, that was sent to his workplace, not his home. Thus, service on defendant Dodrill is not proper. Finally, although defendant Watts was personally served in this action, he is improperly named in a respondeat superior capacity only, which is improper in a Bivens action. Because the record in this action is devoid of any evidence of proper personal service upon all but one of the federal defendants in their individual capacities, this action cannot proceed against them individually and all claims against the defendants should be dismissed.

The District Court will lack jurisdiction over the federal officials, until all of the provisions of Rule 4(i)(1) and (2) are met. Ecclesiastical Order of the Ism of Am, Inc. v. Chasin,

845 F.2d 113, 116 (6th Cir. 1988); Sanchez-Mariani v. Ellingwood, 691 F.2d 592, 594 (1st Cir.

1982).  It is the plaintiff in a civil action who has the burden of establishing the validity of

service of process.  Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476,

488 (3d Cir. 1993); Lensel Lopez v. Cordero, 659 F. Supp. 889, 890 (P.R. 1987).  Therefore, if

that cannot be demonstrated, this case should be dismissed based upon insufficiency of service of

process under Rule 12(b)(5).  Accordingly, claims against the individual defendants should be

dismissed.

D.    **Venue is Improper in this Court**

Plaintiff's Bivens claims must be dismissed pursuant to Rule 12(b)(3) for improper

venue.  Venue in Bivens cases is governed by 28 U.S.C. § 1391(b).  See Stafford v. Briggs, 444

U.S. 527, 544 (1980); Cameron, 983 F.2d at 257; Pollack v. Meese, 737 F. Supp. 663, 665

(D.D.C. 1990).  Under section 1391(b), a Bivens cause of action may be brought only in a

judicial district where: (1) any defendant resides if all defendants reside in the same state; (2) a

substantial part of the events or omissions giving rise to the claim occurred; or (3) any defendant

may be found if there is no district in which the action may otherwise be brought.  See 28 U.S.C.

§ 1391(b).

In the instant case, venue is not proper in the United States District Court for the District

of Columbia under 28 U.S.C. § 1391(b) because none of the defendants reside in the District of

Columbia and a substantial part of the alleged events or omissions giving rise to plaintiff's

claims did not take place in the District of Columbia but rather in Pennsylvania.  Because venue

is improper, the Court should dismiss plaintiff's <u>Bivens</u> claims under Federal Rule of Civil

Procedure 12(b)(3).[2]

### E.    Plaintiff Failed to Exhaust His Administrative Remedies under the PLRA

Plaintiff has failed to exhaust his administrative remedies with regard to the claims raised

in this lawsuit.  The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust "such

administrative remedies as are available" before bringing a civil action in federal court regarding

prison conditions.  <u>See</u> 42 U.S.C. § 1997e(a).   In <u>Booth v. Churner</u>, a unanimous Supreme Court

held that the PLRA requires inmates to complete all stages of any prison administrative remedy

process capable of addressing the inmate's complaint and providing some form of relief.  <u>See</u>

<u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001).  Exhaustion is now required for ***all*** actions brought

under any federal law with respect to prison conditions.  <u>See</u> <u>Porter v. Nussle</u>, 534 U.S. 516, 524,

534 (2002) (holding that the PLRA exhaustion requirement applies to all inmate suits about

prison life whether they involve general circumstances or particular episodes). "Beyond doubt,

Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to

this purpose, Congress afforded corrections officials time and opportunity to address complaints

internally before allowing the initiation of a federal case." <u>Id.</u> at 524-25.  Therefore, the court

must dismiss an inmate's claim if the inmate has failed to exhaust his administrative remedies.

---

[2] Under 28 U.S.C. § 1406(a), if the venue is improper, the Court may transfer the case to a district where it could have been properly brought in the interest of justice.  However, this case would be subject to dismissal no matter where the transfer because plaintiff's complaint centers on a challenge to the validity of the Disciplinary Hearing Officer hearings in which plaintiff was found to have committed a prohibited act.  Because plaintiff's sanctions specifically included a forfeiture of statutory good conduct time, he is required to first successfully challenge and overturn the disciplinary proceeding before bringing a <u>Bivens</u> claim. <u>See</u> <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).  Therefore, outright dismissal better serves the interests of justice.

See Booth, 532 U.S. at 741 (affirming dismissal of the case for failure to complete exhaustion of the inmate's administrative remedy appeals).

The BOP has implemented a three-tiered administrative remedy procedure under 28 C.F.R. § 542.10 to review any complaint regarding an inmate's confinement. The procedure requires an inmate first to file a complaint with the institution staff.[3] If dissatisfied with the response at that level, the inmate may appeal to the Regional Director. If the Regional Director denies the inmate's appeal, the inmate may then bring a final appeal to the General Counsel in the Central Office of the Bureau of Prisons. An administrative remedy is not considered exhausted until the last level of review.

A review of BOP records reflects that plaintiff filed Regional Administrative Remedy Appeal Numbers 320229-R1 thru R3 between December 19, 2003 through January 20, 2004 with the Northeast Regional Office, challenging the November 20, 2003 decision of the Disciplinary Hearing Officer at FCI Allenwood. See Declaration of Ann H. Zgrodnik, Attachment 2: Administrative Generalized Retrieval Screen for Ernest Simpson, Reg. No. 18567-037. The first two appeals (R1 and R2) were rejected for procedural defects. Id. On or about January 20, 2004, plaintiff filed Regional Administrative Remedy Appeal Number 320229-R3 with the Northeast Regional Office challenging the November 20, 2003 decision of the Disciplinary Hearing Officer at FCI Allenwood. See Declaration of Ann H. Zgrodnik, Attachment 3: Regional Administrative Remedy Appeal, Case Number 320229-R3, and Response. In a response dated February 19, 2004, plaintiff was informed that he will be advised

---

[3] However, complaints regarding a disciplinary hearing are filed first at the region rather than institution level.

of further proceedings as a review of the record revealed there were some questions concerning the specific evidence relied upon to find he committed the prohibited act. Id.  Plaintiff was informed that he may appeal to the Regional Office if he is dissatisfied with the result of the further proceedings. Id.

On or about March 25, 2004, plaintiff filed a Regional Administrative Appeal with the Northeast Regional Director challenging the DHO rehearing that was held on March 4, 2004. See Declaration of Ann H. Zgrodnik, Attachment 4: Regional Administrative Remedy Appeal, Case Number  329151-R1 and Response. In a response dated April 23, 2004, the Northeast Regional Director informed plaintiff that the DHO had granted him another rehearing. Id.   On or about May 10, 2004, plaintiff submitted a Central Office Administrative Remedy Appeal challenging the Regional Director's response.  See Declaration of Ann H. Zgrodnik, Attachment 5: Central Office Administrative Remedy Appeal, Case Number 329151-A1, and Response.  In a response dated May 19, 2004, plaintiff was informed that he was given a rehearing from the Regional Director and he must reinstate his appeal to the Regional Director if dissatisfied with the outcome of the rehearing.  Id.

Records indicate that plaintiff *failed* to file any administrative remedies after receiving a copy of the amended DHO Rehearing Report on January 11, 2005. See Declaration of Ann H. Zgrodnik, Attachment 2: Administrative Generalized Retrieval Screen.  Plaintiff was released from FCI Allenwood on March 7, 2005.  Since plaintiff has failed to exhaust his administrative remedies, he has not complied with the PLRA mandatory exhaustion requirements regarding the claims brought in this lawsuit and the Court should dismiss his complaint.

    **F.**    **<u>Heck v. Humphries</u> Precludes Collateral Attack of a Disciplinary Action in a <u>Bivens</u> Action**

In <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), the Supreme Court held that a prisoner may not bring a civil rights action for money damages (in that case, under 42 U.S.C. §1983) alleging unconstitutional conviction or imprisonment, unless first the plaintiff has had the conviction reversed, expunged, invalidated, or called into question by a federal court's issuance of a writ of habeas corpus.  <u>Id.</u> at 486-87.  In order for a valid constitutional civil rights case for money damages to proceed, therefore, the court must determine whether a successful claim would necessarily imply the invalidity of the underlying conviction or sentence.

The Supreme Court subsequently decided <u>Edwards v. Balisok</u>  520 U.S. 641 (1997), a unanimous decision which applied <u>Heck</u> to a prisoner's civil rights suit attacking an internal prison disciplinary sanction that affected the overall length of confinement, where good time had been taken from the inmate. This was the case even though the inmate was challenging the procedures used at his hearing, and not the taking of the good time itself.  The Supreme Court said if Balisok established the deceit and bias of the prison official holding the hearing, he would be entitled to have his disciplinary conviction overturned. Thus, the Court concluded that Balisok's claim for damages, based on procedural defects in the prison disciplinary hearing, necessarily implied the invalidity of the punishment imposed and was therefore not cognizable under § 1983.  <u>Id.</u> at 647.  The inmate would first need to have the disciplinary action overturned in order to proceed with a money damages claim that necessarily implies the invalidity of the punishment imposed.

The D.C. Circuit extended  the holding of <u>Heck v. Humphries</u> to <u>Bivens</u> actions brought against federal officials in <u>Williams v. Hill</u>, 74 F.3d 1339, 1340 (D.C. Cir.1996).  In <u>Gambina v. Sawyer</u>,  No. 99-5128, 1999 WL 728353 (D.C. Cir. Aug. 17, 1999) (per curiam), application of

these cases to a federal prisoner's <u>Bivens</u> case which necessarily implied the invalidity of

disciplinary punishment previously imposed was illustrated by the D.C. Circuit:

> Appellant is a federal inmate who was found guilty, in the context of a prison
> disciplinary proceeding, of attempting to escape from the facility and attempting
> to take hostages. Appellant's sanctions included the loss of good-time credits
> previously earned toward his release. Appellant alleges that the procedures used
> in the disciplinary proceedings violated his right to due process. The procedural
> defects alleged would, if established, necessarily imply the invalidity of the
> punishment imposed. Appellant has not demonstrated that the disciplinary
> punishment imposed has been invalidated, and thus his claim for money damages
> is not cognizable under <u>Bivens v. Six Unknown Named Agents of the Federal
> Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). <u>See
> Edwards v. Balisok</u>, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997); <u>Heck
> v. Humphrey</u>, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994);
> <u>Williams v. Hill</u>, 74 F.3d 1339, 1340 (D.C. Cir. 1996).

In the instant case, plaintiff's complaint centers on a challenge to the validity of the

Disciplinary Hearing Officer hearings in which he was found to have committed a prohibited act

of Receiving Money from Another Inmate For Prohibited Purpose.  The DHO found that

plaintiff had taken money for legal services and this was substantiated by institution staff.

Because plaintiff's sanctions specifically included a forfeiture of statutory good conduct time, he

is plainly required to first successfully challenge and overturn the disciplinary proceeding before

bringing a <u>Bivens</u> claim which necessarily invalidates the validity of that action.

### F.    Defendants Named In Their Official Capacities Are Protected By Sovereign Immunity And Should Be Dismissed As Defendants

Plaintiff has named the Federal Bureau of Prisons, Mr. Watts, Mr. Dodrill, Mr.

Bittenbender, and Ms. Cook as Defendants in their individual and official capacities.  Defendants

sued in their official capacities should be dismissed from this <u>Bivens</u> civil action because

employees of the federal government sued in their official capacities are protected by sovereign

immunity.  A suit against a Bureau of Prisons employee in his or her official capacity is

21

essentially a suit against the United States. It is well settled that the United States and its

agencies are entitled to sovereign immunity from suit, and an action for damages may not be

brought against the United States unless it waives sovereign immunity. F.D.I.C. v. Meyer, 114

S.Ct. 996 (1994). E.g., Pereira v. United States Postal Service, 964 F.2d 873 (9th Cir. 1992);

Platsky v. C.I.A., 953 F.2d 26 (2d Cir. 1991); Rivera v. United States, 924 F.2d 348 (9th Cir.

1988); McCollum v. Bolger, 794 F.2d 602 (11th Cir. 1986), cert. denied, 107 S.Ct. 883 (1986).

Therefore, because the United States, its agencies, and employees sued in their official

capacities have not waived sovereign immunity in Bivens actions, this action should be

dismissed as to the Bureau of Prisons and the Defendants named in their official capacities.

**G.    The Individual Defendants are Entitled to Dismissal on the Basis of Qualified Immunity Since the Allegations of the Complaint Do Not Amount to the Violation of a Clearly Established Constitutional Right**

All named Defendants are entitled to dismissal from this <u>Bivens</u> suit on the basis of qualified immunity.[4]  When qualified immunity is raised by a defendant, the plaintiff cannot maintain a <u>Bivens</u> action against the defendant unless and until the plaintiff shows the defendant violated a clearly established constitutional right.  <u>Siegart v. Gilley</u>, 500 U.S. 226, 231 (1991); <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); <u>Saucier v. Katz</u>, 533 U.S. 194 (2001).  A federal government employee is generally entitled to immunity from suit for personal damages if his or her conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).  <u>See</u> <u>Siegart v. Gilley</u>, 500 U.S. 226, 111 S.C. 1789 (1991); <u>Anderson v. Creighton,</u> 483 U.S. 635 (1987);  <u>Mitchell v. Forsyth</u>, 472 U.S. 511 (1985); <u>Davis v. Scherer</u>, 468 U.S. 183, 197 (1984). The qualified immunity defense in this context is "an immunity from suit rather than a mere defense to liability."  <u>Mitchell v. Forsyth</u>, 472 U.S. at 526.  In recognition of this, the Supreme Court has repeatedly stressed the desirability to resolve the qualified immunity issues at the earliest stage of litigation.  <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991); <u>Anderson v. Creighton,</u> <u>supra</u>;  <u>Mitchell v. Forsyth</u>, <u>supra</u>.

Once the individual defendants raise qualified immunity, courts must resolve two issues: 1) whether a constitutional right would have been violated on the facts alleged; and assuming the

---

[4]  Although a Court faced with improper service will typically provide a plaintiff with the option to cure service, rather than dismiss the action outright, the Court should not provide plaintiff that option in this case, as doing so would be futile.  <u>E.g.</u>, <u>Simpkins v. District of Columbia Government</u>, 108 F.3d 366, 370 (D.C. Cir. 1997).

violation is established (from the pleadings), 2) whether the right alleged to have been violated was clearly established.  Saucier v. Katz, 533 U.S. 194 (2001).

In Saucier, *supra*, the Supreme Court held that in a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence.  Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive.  Saucier, 533 U.S. at 200.

The specific qualified immunity inquiry is twofold:  First, taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established.  Id.

The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  Saucier, 121 U.S. at 2156.  See Wilson v. Layne, 526 U.S. 603, 615 (1999).  An analysis of Plaintiff's claims against each of the individual defendants reveals that Plaintiff failed to state a constitutional violation against any of the defendants, because the complaint does not articulate what actions each named defendant took to violate his constitutional rights.

Even assuming arguendo, the complaint could be interpreted to sufficiently state each named defendant committed unconstitutional acts, Plaintiff has failed to articulate how these constitutional rights were clearly established.  Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Accordingly, under the facts as alleged in the complaint, each of the named defendants is entitled to qualified immunity and should be dismissed from this lawsuit.

### H.    Defendants Named Because of Their Administrative Capacities Cannot Be Held Liable via <u>Respondeat</u> <u>Superior</u>

As is the case with actions under 42 U.S.C. §1983, <u>respondeat superior</u> liability does not exist under <u>Bivens</u>. <u>Estate of Rosenberg v. Crandell</u>, 56 F.3d 35, 37 (8th Cir. 1987). Instead, a defendant is liable for his personal acts only. <u>Id.</u> The general responsibility of a warden for supervising the operation of a prison is not sufficient to establish personal liability. <u>Id.</u>, citing <u>Ouzts v. Cummins</u>, 825 F.2d 1276, 1277 (8th Cir. 1987); see also <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976)(Defendants in <u>Bivens</u> action dismissed if no personal involvement or participation in alleged unconstitutional actions.); <u>Durmer v. O'Carroll</u>, 991 F.2d 64 (3rd Cir. 1993)(<u>Respondeat superior</u> is not acceptable basis for liability under §1983.).

The District of Columbia Circuit has repeatedly rejected <u>respondeat</u> <u>superior</u> as a basis for the imposition of <u>Bivens</u> liability and required plaintiffs to allege the personal involvement of each defendant in the events that gave rise to the plaintiffs' claims. <u>See, e.g.</u>, <u>Risley v. Hawk</u>, 108 F.3d 1396 (D.C. Cir. 1997) (explaining that absent allegations of personal involvement, claims against federal officials are based on <u>respondeat</u> <u>superior</u>, and are not cognizable in a <u>Bivens</u> action); <u>Haynesworth v. Miller</u>, 820 F.2d 1245, 1259 (D.C. Cir. 1987) (noting that fellow government employees cannot be held liable under the theory of <u>respondeat</u> <u>superior</u> for either constitutional or common law torts).

The Court in <u>Estate of Rosenberg</u>, *supra*, stated that a bare allegation that someone in supervisory authority has been deliberately indifferent, without any specification of that person's contact in fact with the plaintiff nor even an explicit charge of inadequate training or supervision

of subordinates, is not sufficient to state a <u>Bivens</u> claim. <u>Estate of Rosenberg</u>, 56 F.3d at 38. In

<u>Durmer v. O'Carroll</u>, 991 F.2d at 69, the Court held that the Warden and Commissioner for

Corrections, neither of whom were physicians, could not be considered deliberately indifferent to

prisoner's medical needs simply because they failed to respond directly to medical complaints of

prisoner, who was already being treated by the prison doctor. There the inmate had sent them

letters explaining his situation to which they did not respond.

      Plaintiff does not identify any direct involvement by Defendants Dodrill and Watts in the

alleged constitutional violations.  Rather, plaintiff merely names them in the Complaint in their

respective capacities.  Thus, as the case law establishes, the plaintiff has no viable cause of

action against them.  <u>See</u> <u>Estate of Rosenberg</u>, 56 F.3d at 37; <u>Rizzo</u>, 423 U.S. 362.

      It is clear from the complaint that plaintiff's suit is based upon Defendant's Dodrill and

Watts' general responsibilities of supervision and fail to point to any specific personal

involvement or participation in an alleged constitutional violation. These Defendants should not

be held accountable for any alleged infringement of plaintiff's constitutional rights when they

had nothing to do with the actions about which plaintiff complains.   Therefore, they are entitled

to dismissal from this complaint on the basis of qualified immunity since the claims against them

do not allege their personal involvement and, thus, do not state a violation of a clearly

established Constitutional right.  <u>Saucier v. Katz</u>, 533 U.S. 194 (2001); <u>Siegart v. Gilley</u>, 111

S.Ct. 1789, 1793 (1991); <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).

## **CONCLUSION**

For the reasons set forth herein, defendants respectfully request that the Court dismiss plaintiff's claims in their entirety.

December 21, 2006                              Respectfully submitted,


       /s/
_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney


       /s/
_____
RUDOLPH CONTRERAS, DC BAR #434122
Assistant United States Attorney


       /s/
_____
JOHN F. HENAULT, D.C. Bar # 472590
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC 20530
(202) 307-1249
(202) 514-8780 (facsimile)

28

## <u>CERTIFICATE OF SERVICE</u>

On December 22, 2006, a true and correct copy of the foregoing was sent to plaintiff by

first-class mail, postage prepaid, at

**ERNEST SIMPSON**
5701 37th Avenue
Hyattsville, MD 20782

_____/s/_____
John F. Henault
Assistant United States Attorney

29