**Affidavit and Exhibits in support of Plaintiff's opposition to
Defendant's Motion To Dismiss**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERNEST SIMPSON )<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>BUREAU OF PRISSIONS )<br>)<br>Defendants. ) | No. 06-1090 (CKK) |

### AFFIDAVIT OF ERNEST SIMPSON

Ernest Simpson, being duly sworn, deposes and says:

1. I am the Plaintiff in this case. I make this affidavit in support of Plaintiff's Motion In Opposition To Defendants' Motion To Dismiss.

2. I was an inmate at Allenwood Correctional Institution from April-2000 until March 7, 2005.

3. Inmate Michael Ingram came to me maybe in June-2002 asking me for advice related to how to best solve his problems with the records office. Someone in the law library sent him to me because: (1) we lived in the same housing unit (2) both of us were sentenced under the D.C. Code and (3) I had previously litigated similar issues to which he had questions.

4. Ingram asserted to me that his sentence computation was inaccurate. He contended that his parole eligibility date was being delayed due to the record office's aggregation of his D.C. Code and U.S. Code Sentence. A copy of Ingram's sentence aggregation complaints is attached to this Affidavit as **Exhibit 1.**

5. I was a D.C. Code and U.S. Code prisoner. I had raised very similar issues of sentencing aggregation at the institution and regional levels. I was able to give Ingram

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERNEST SIMPSON | * |
| Plaintiff, | * |
| | * No. 05-2295 |
| V. | * |
| BUREAU OF PRISONS | * |
| Defendants. | * |

## AFFIDAVIT OF ERNEST SIMPSON

Ernest Simpson, being duly sworn, deposes and says:

1. I am the Plaintiff in this case. I make this affidavit in support of Plaintiff's Motion In Opposition To Defendant's Motion To Dismiss.

2. I was an inmate at Allenwood Correctional Institution from April-2000 until March 7, 2005.

3. Inmate Michael Ingram came to me maybe in June-2002 asking me for advice related to how to best solve his problems with the records office. Someone in the law library send him to me because: (1) we lived in the same housing unit (2) both of us were sentenced under the D.C. Code and I had previously litigated similar issues to which he had questions.

4. Ingram asserted to me that his sentence computation was inaccurate. He contended that his parole eligibility date was being delayed due to the record office's aggregation of his D.C. Code and U.S. Code Sentence. A copy of Ingram's sentence aggregation complaints is attached to this affidavit as **Exhibit 1**.

5. I was a D.C. Code and U.S. Code prisoner. I had raised very similar issues of sentencing aggregation at the institution and regional levels. I was able to give Ingram

advice based on my own legal situation. A copy of my sentence aggregation complaints is attached to this affidavit as **Exhibit. 2**

6. On November 7, 2003, I received a money order from Tawana Grimes.

7. The envelope that I received at mail call did not have a return to sender name on the envelope and the money receipt send to me from the business office only had "Grimes" on the receipt. A copy of the envelope and receipt is attached to this affidavit as **Exhibit 3 and 4.**

8. I know Ernest Grimes, Thomas Grimes and I have known Tawana Grimes's family for more then 30 years. These Grimes are not related.

9. The only information provided to me and all other inmates during the Admissions and Orientation (A&O) Program regarding the BOP's rules and regulations relative to funds received through the mail was that to ensure correct posting of monies received through the mail to our account, money orders must contain our name and registration number.

10. A&O Staff never told me who I could and could not receive money through the mail nor does the Inmate Information Handbook issued by the Federal bureau of Prisons (BOP) provide that information.

11. For all of the above reasons at 6 through 10, I had no reasons to question the posting of this money to my account or reason to refuse the money.

12. As a result of the November 7, 2003 incident, I was served with disciplinary charges for receiving money from another inmate for prohibited purpose which is a Code 217 Incident Report rated in the High Severity Category. The notice of these charges is attached as **Exhibit 5.**

13. Code 217 reads as follows: giving money to, or receiving money from, any person for purposes of introducing contraband or for any other illegal or prohibited purposes.

14. On November 12, 2003, Margie Cook, SIS Technician wrote me an Incident Report charging me with receiving money from another inmate for prohibited purpose.

15. Ms Cook in the past have charged inmates in the same identical alleged situation with giving or accepting money from another inmate without staff authorization. This would be a Code 328 violation classified in the Moderate Severity Category which requires a hearing by the inmate's unit team. The sanctions are usually extra duty and the Incident report does not go in the inmate's record/files. A copy of SIS Technician charging other inmates relative to same conduct with a lesser charge is attached to this affidavit as **Exhibit 6.**

16. I received a disciplinary hearing before the Disciplinary Hearing Officer (DHO) on November 20, 2003.

17. The evidence at the hearing consisted solely of the written report of Margie Cook, SIS Technician and my testimony.

18. After the hearing I received a written disposition from the DHO stating that the specific evidence relied on to support the DHO's findings were/was that the DHO believed " the information provided by staff members involved in this case. " A copy of the disposition is attached to this affidavit as **Exhibit 7 (page 2 of 3 - section V).**

19. The staff statements alleged that I received a money order from Tawana Grimes. The statement did not state any facts showing that I received money for purposes of introducing contraband or for any other illegal or prohibited purposes and I specifically denied doing so at the hearing. A copy of the Staff's Statements are attached to this affidavit as **Exhibit 8.**

20. I read the DHO's reason for the sanction or action taken against inmate Ingram. The DHO states that "Ingram's exchanging of money for contraband cannot be tolerated in a correctional institution as such behavior seriously threatens the security and orderly operation of the institution." A copy of the DHO's reason for sanction or action taken against inmate Ingram is attached to this affidavit as **Exhibit 9 (Section VII).**

21. The DHO's reason for sanction or action taken against inmate Ingram would suggest to someone reading this information that I was exchanging contraband for money.

22. I have never exchanged contraband for money with inmate Ingram or any other inmate.

23. I do not gamble.

24. I had at least 10 random urine test which were clean. I do not use drugs.

25. This was my first and only Incident Report during my six (6) years of incarceration.

26. I was never charged or given a clear notice of the contraband that I am alleged to have exchanged with inmate Ingram for money, therefore, I could not defend myself against those charges.

27. The DHO Report shows that the DHO made findings that I received money from another inmate for prohibited purpose. A copy of the DHO report is attached to this affidavit as **Exhibit 10.**

28. Although the DHO gave me a copy of his findings which was placed in my files, he also placed in my records/file another set of documents stating that I was involved in doing legal service/work for other inmates and charging for my work. A copy of the Chronological Disciplinary Record is attached to this affidavit as **Exhibit 11**.

29. The Chronological Disciplinary Record is read at each reclassification by the unit team and could have rendered decisions by the unit team and other staff reading my record/files relative to my trustworthiness, decisions related to lowering my security, related to transfers and decisions related to recommendations for other programs.

30. As stated in item 19 through 25 the DHO suggests that I was punished for exchanging contraband with inmate Ingram for money. See DHO's reason for sanction or action taken against inmate Ingram attached to this affidavit as **Exhibit 8 (Section VII)**.

31. The records also show that the DHO willingly, knowingly, intentionally made false statements stating that inmate Ingram was involved in sending thousands of dollars outside and filtering in through inmate Simpson #18567-037. The DHO place those false statements in inmate records. My financial records clearly dispute these unfounded allegations. A copy of Ingram's Chronological Disciplinary Record and Simpson's financial records are attached to this affidavit as **Exhibit 12.**

32. On January 20, 2004, my appeal was received in the Regional Director's Office.

33. On February 19, 2004, the Regional Director granted my appeal and remanded the disciplinary action for further investigation.

34. The contend of my appeal was basically the same as it is presented here, it was laid out in affidavit form with supporting exhibits.

35. The Regional Director determined that after a review of the record there were some questions concerning the specific evidence relied upon to find that I committed a prohibited act. A copy of the Regional Director's Response attached to this affidavit as **Exhibit 13.**

36. On February 19, 2004 the Regional Director sent a Memorandum to S.A. Yates, Warden FCI Allenwood and a copy to the DHO stating "this disciplinary action is being remanded for further review. Absent evidence to support a Code 217 charge, the incident report must be expunged." A copy of the Regional Director's Memorandum is attached to this affidavit as **Exhibit 14.**

37. On March 4, 2004, the DHO conducted a rehearing and amended the DHO's Hearing Report. A copy of the DHO's amended report is attached to this affidavit as **Exhibit 15.**

38. In the amended DHO hearing report the DHO finds that I committed conduct

which disrupts, most like giving receiving money from another inmate for prohibited purpose, Code 299 most like Code 217 which supports and substantiates the charges outlined in the initial Incident Report. See **Exhibit 15.**

39. The DHO ignored the Memorandum send to him by the Regional Director instructing him to expunge the Incident Report absent evidence to support a Code 217 charge.

40. After knowingly and intentionally making false statements and making those statements part of the inmate record, the DHO now charges that I committed conduct which disrupts the orderly running of the institution, most like: Receiving Money From Another Inmate For A Prohibited Purpose.

41. The records show that the DHO made five (5) different findings related to this Incident Report as set forth above: (1) I received money from another inmate for prohibited purpose (2) I was involved in doing legal service/work for other inmates and charging for my work (3) I was exchanging contraband with inmate Ingram for money (4) Inmate Ingram was filtering thousands of dollars into the institution through me (5) I committed conduct which disrupts the orderly running of the institution most like receiving money from another inmate for prohibited purposes.

42. 28 CFR Section 541.17 states in mandatory language that if the DHO finds that the inmate has committed a prohibited act(s) other than the act(s) charge, then the DHO shall record those findings clearly and shall change the Incident Report to show only the incident and code reference to charges which were proved. Institution staff may not use the existence of charged but unproven misconduct against the inmate.

43. On March 19, 2004 I appealed the March 4, 2004 decision of the DHO.

44. On April 23, 2004 the Regional Director determined that the DHO had ordered a rehearing of this disciplinary action. A copy of the Regional Director's Response is attached to this affidavit as **Exhibit 16.**

45. The Regional Director advise me in his response that I may appeal to the General Counsel, if I was dissatisfied with his response. **See Exhibit 16.**

46. I appealed the Regional Director's April 23, 2004 Response because I was dissatisfied with his response. The Regional Director had made a finding that the evidence did not support Code 217 charges and used mandatory language in his Memorandum to the DHO to expunge the Incident Report. Once the Regional Director reviewed the second appeal, he had the authority and obligation to expunge the Incident Report after it was clear that the DHO disregarded his February 19, 2004 Memorandum.

47. I also appealed the decision to allow the same DHO to hear the disciplinary action after the record shows that he knowingly and intentionally made false statements

and made those statements part of the inmates Central Records/Files.

48. On May 19, 2004 the General Counsel's Office rejected my appeal. I was instructed that I could not appeal to the General Counsel's Office until after, I had the second rehearing by the DHO. A copy of the General Counsel's Office response is attached to this affidavit as **Exhibit 17**.

49. The Regional Director/DHO ordered a rehearing on April 23, 2004. I was released on March 7, 2005, eleven (11) months after the rehearing was to be scheduled. I was never given a rehearing.

50. Based on information and belief the initial Incident Report was given to me as retaliation for filing a legitimate medical complaint that is pending in the Middle District of Pennsylvania. I raised this issue in my affidavit in support of my appeal. It was thought that I was asserting a claim against individual staff members at FCI Allenwood. The claim against individual staff members was dismissed on February 17, 2004, which is subsequent to the Incident Report written November 12, 2003. A copy of the District Court's Order is attached to this affidavit as **Exhibit 18**.

51. I based the above belief on informal institution policy to transfer, harass, or retaliate against prisoners to file complaints against FCI Allenwood or its staff members. See Copies of affidavits and case attached to this affidavit as **Exhibit 19**.

52. I did not commit the prohibited act alleged in the Incident Report or commit the charges/allegations made by the DHO in his findings of fact.

Date: February 13, 2006

_____
Ernest Simpson

Subscribed and Sworn to before me this __14th__ day of February 2006

_____
Notary Public

My commission expires:

June 30, 2006